IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT ANDREW SHAW, | § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:19-cv-3077-M-BN |
| WELLS FARGO BANK, N.A. a/k/a WELLS FARGO HOME MORTGAGE and ALBERTELLI LAW, | § § § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
<u>**UNITED STATES MAGISTRATE JUDGE**</u>

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States Chief District Judge Barbara M. G. Lynn. *See* Dkt. No. 5.

Plaintiff Robert Andrew Shaw has filed a motion to amend his complaint to add a nondiverse party whose joinder would destroy subject matter jurisdiction. *See* Dkt. Nos. 27 & 28.

Defendant Wells Fargo Bank, N.A. has filed a response opposing amendment. *See* Dkt. No. 30.

The undersigned issues the following findings of fact, conclusions of law, and recommendation that the Court should grant Plaintiff's Motion for Leave to Amend Complaint [Dkt. No. 27] and remand the case to the state court from which it was removed.

**Background**

On December 3, 2019, Shaw filed this lawsuit in state court against Defendants Wells Fargo and Albertelli Law to stop a foreclosure, which was scheduled for that day between 1:00 p.m. and 4:00 p.m. *See* Dkt. No. 1-4. By the time Shaw obtained a temporary restraining order to halt the sale, his Property had been sold.

Wells Fargo removed the case to this Court on December 31, 2019 on the basis of diversity jurisdiction. *See* Dkt. No. 1. Wells Fargo asserts that Shaw is a citizen of Texas, Wells Fargo is a citizen of South Dakota, and Albertelli Law is a citizen of Florida. *See id.* at 4.

On January 21, 2020, Shaw filed his First Amended Complaint and Request for Temporary Injunction. *See* Dkt. No. 12. Shaw seeks to add a new party, ARNS Investments LLC ("ARNS"). Shaw asserts a claim for quiet title against ARNS, which he contends is the party that bought the Property at the foreclosure sale. *See id.* at 2, 14-15. In the proposed amended complaint, Shaw alleges that "Defendant ARNS Investments LLC is a domestic limited liability company whose registered agent for service of process is Salima Mawani located" in Lewisville, Texas. *See id.* at 2.

The undersigned observed that, "[a]lthough Shaw's amended complaint does not include all necessary information regarding the parties' citizenship as required for diversity jurisdiction or sufficient allegations of the citizenship of this newly-added Texas limited liability company, *see MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310 (5th Cir. 2019), it appears that this defendant—depending on the citizenship of its members could be a Texas citizen for purposes of diversity

jurisdiction and that its joinder could defeat complete diversity and require remand to state court." Dkt. No. 14.

The undersigned then ordered Plaintiff to file a motion for leave to file his amended complaint and to include in the motion all necessary information regarding the parties' citizenship as required for jurisdiction over this action, and, if that information would, if credited, lead to the conclusion that ARNS is a citizen of the same state as Shaw, address the relevant factors courts consider in deciding to permit a non-diverse defendant's post-removal joinder that will defeat diversity jurisdiction and require remand. *See id.* The undersigned also provided Defendants Wells Fargo and Albertelli Law an opportunity to respond to the motion for leave. *See id.* The undersigned clarified that, unless and until the motion for leave is granted, the live pleading is Shaw's original petition [Dkt. No. 1-4] and not the First Amended Complaint [Dkt. No. 12] filed without leave. *See* Dkt. No. 24.

Shaw filed his motion for leave to amend the complaint on March 1, 2020, *see* Dkt. No. 27, and a supplement to the motion for leave on March 4, 2020, *see* Dkt. No. 28. In the supplement, Shaw asserts that "Defendant ARNS Investments LLC is a domestic limited liability company organized under the laws of the State of Texas whose principal place of business is located at, and whose managing member, Salima Mawani, resides" in Lewisville, Texas. *See* id. at 2.

Shaw also asserts that the purpose for adding ARNS as a party is not to destroy federal diversity jurisdiction. Shaw argues that ARNS is an indispensable nondiverse party whose identity was not discoverable at the time that he filed his original

-3-

petition and that his claim against ARNS did not accrue until after the original petition was filed. *See* Dkt. Nos. 27, 28.

In its response, Wells Fargo argues that the motion for leave should be denied because the proposed amendment to add ARNS as a party would be futile. *See* Dkt. No. 30.

**Legal Standards**

When, as here, the party is not subject to an expired deadline for seeking leave to amend, Federal Rule of Civil Procedure 15(a) requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2). Leave to amend is not automatic, *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005), but the federal rules' policy "is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).

The Court "may consider a variety of factors" when deciding whether to grant leave to amend, "including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones*, 427 F.3d at 994. But Rule 15(a) provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), and the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy*, 660 F.2d at 598; *accord*

*Jebaco Inc. v. Harrah's Operating Co. Inc.*, 587 F.3d 314, 322 (5th Cir. 2009) ("leave to amend is to be granted liberally unless the movant has acted in bad faith or with a dilatory motive, granting the motion would cause prejudice, or amendment would be futile").

"A court may therefore 'refuse leave to amend if … the complaint as amended would be subject to dismissal.'" *Petty v. Great W. Cas. Co.*, No. 3:17-cv-2526-S-BN, 2018 WL 6252550, at *2 (N.D. Tex. Oct. 10, 2018) (quoting *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quotation marks omitted); *see also Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016) (While "the language of [Rule 15(a)] 'evinces a bias in favor of granting leave to amend,'…a district court need not grant a futile motion to amend.") (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (quoting *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 283 F.2d 1157, 1162 (5th Cir. 1982) (citation omitted); *cf. Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016) ("When an amended complaint would still 'fail to survive a Rule 12(b)(6) motion,' it is not an abuse of discretion to deny the motion'" for leave to amend.) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)).

Because the Court's futility analysis parallels an analysis of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the undersigned notes that, "[u]nder that standard, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' [And a] claim is facially plausible if the complaint 'allows the court to draw a reasonable inference that the

defendant is liable for the misconduct alleged.'" *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (in turn quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007); internal quotation marks omitted); *see also Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) ("per curiam) ("[T]o survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that a plaintiff contends entitle him to relief.) (citing Fed. R. Civ. P. 8(a)(2)-(3), (d)(1), (e)); accord *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare,* 781 F.3d 182, 191 (5th Cir. 2015) ("[T]o survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief—including factual allegations that, when assumed to be true, raise a right to relief above the speculative level.") (footnote and internal quotation marks omitted).

The United States Supreme Court "has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.,* 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 574 U.S. at 11), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson*, 574 U.S. at 11.

But, when the plaintiff seeks to amend the complaint to add a new, nondiverse party after the case has been removed, the Court "must apply a higher level of

scrutiny than required under Fed. R. Civ. P. 15(a)." *Allen v. Walmart Stores, Inc.*, 907 F.3d 170, 185 (5th Cir. 2018) (citing *Hensgens v. Deer & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987) ("The district court, when faced with an amended pleading naming a new nondiverse defendant in a removed case, should scrutinize that amendment more closely than an ordinary amendment."). The Court also "has greater discretion to grant or deny the joinder." *Shunatona v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:16-cv-1694-M-BN, 2016 WL 7665882, at *2 (N.D. Tex. Dec. 2, 2016) (citing 28 U.S.C. 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.").

In deciding whether to permit the joinder of a nondiverse defendant after removal, the courts in the Fifth Circuit consider four factors, as outlined in *Hensgens*: (1) the extent to which the purpose of the amendment is to defeat diversity jurisdiction, (2) whether the plaintiff has been dilatory in asking to amend, (3) whether the plaintiff will be significantly injured if amendment is not allowed, and (4) any other special equitable factors. *See Hensgens*, 833 F.2d at 1182; *Shuntatona*, 2016 WL 7665882, at *2. Courts use these factors to balance the plaintiff's interest in avoiding parallel litigation in state and federal court with the defendant's interest in being in a federal forum. *See Hensgens*, 833 F.2d at 1182. According to the Fifth Circuit in *Hensgens*, the four factors better balance these competing interests than determining joinder based on a "rigid distinction of whether the proposed added party is an indispensable or permitted party." *See id*.

**Analysis**

I. <u>Shaw has satisfied the pleading requirements for the parties' citizenship.</u>

In determining whether diversity jurisdiction exists, the citizenship of a limited liability company is determined by the citizenship of all of its members.

To establish diversity jurisdiction, a party must specifically allege the citizenship of every member of the LLC. *See MidCap Media*, 929 F.3d at 314 (quotations and citations omitted.)

Here, Shaw alleges ARNS' citizenship based on the Texas residence of its managing member, Salima Mawani, in Texas. *See* Dkt. No. 27 at 2; *see generally Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2001) (per curiam) (explaining that "[e]vidence of a person's place of residence" serves as "prima facie proof of his domicile" for 28 U.S.C. § 1332's purposes).

There is no suggestion or evidence before the Court that there are other members of ARNS, and, although the parties dispute whether this Court has subject matter jurisdiction, they agree that ARNS is a Texas citizen for purposes of diversity jurisdiction. *See* Dkt. No. 33 at 6.

II. <u>Shaw should be granted leave to join ARNS as a nondiverse party.</u>

A. <u>The purpose in joining ARNS is not to defeat diversity jurisdiction.</u>

The first *Hensgens* factor − whether Shaw's primary purpose in seeking to amend is to defeat jurisdiction − weighs in favor of granting the motion for leave.

1. <u>Shaw could not know ARNS' identity when he filed the original petition</u>.

"[W]hen deciding whether the primary purpose of an amendment is to defeat diversity, courts take into account whether the plaintiff 'knew or should have known the identity of the nondiverse defendant when the state court complaint was filed.'" *Andrews Restoration, Inc. v. Nat'l Freight, Inc.*, No. 3:15-cv-1336-M, 2015 WL 4629681, at *4 (N.D. Tex. Aug. 4, 2016) (quoting *Priester v. Long Beach Mortg. Co.*, No. 4:6-cv-641, 2011 WL 6116481, at *2 (E.D. Tex. Dec. 8, 2011).

If the plaintiff did not know the nondiverse defendant's identity at the time the complaint was filed, it is less likely that the plaintiff is joining the nondiverse defendant to destroy diversity. *See id.* (citations omitted). But, if the plaintiff knew of the nondiverse defendant from the outset and chose to exclude it from the original pleading, the court "'views this fact with much suspicion.'" *Id.* (quoting *O'Connor v. Auto. Ins. Co. of Hartford, Conn.*, 846 F. Supp. 39, 41 (E.D. Tex. 1994)). "Courts have considered this knowledge very relevant." *Id.; see also Anzures v. Prologis Tex.*, 886 F. Supp. 2d 555, 564 (W.D. Tex. 2012) (explaining that the plaintiff's "clear desire to litigate this case in state court, coupled with the fact that Plaintiff has known of [nondiverse Defendant]'s identity and role in this case since the beginning…trump the fact that the Proposed Amended Complaint asserts cognizable claims against [nondiverse Defendant].").

Likewise, where a plaintiff "'seek[s] to add a nondiverse defendant shortly after removal, but prior to any additional discovery, [that] is further indication that the amendment is sought for the purpose of defeating diversity.'" *Id.* (quoting *Martinez v. Holznecht*, 701 F. Supp. 2d 886, 889 (S.D. Tex. 2010)). "However, if it is clear that

the plaintiff sought to include the defendant in the litigation from the beginning, then an amendment sought shortly after removal is not probative of a plaintiff's intent to defeat diversity." *Id*. (citations omitted).

Here, Shaw could not have known the identity of ARNS Investments LLC because he filed his lawsuit in order to stop the foreclosure sale and before there was a buyer. Instead, Shaw's claim against ARNS did not accrue until after the original petition was filed.

    2.  <u>Shaw's proposed quiet title claim against ARNS is not futile</u>.

When examining the first *Hensgens* factor, courts also consider the validity of the claims against the nondiverse defendant: When a plaintiff states a potentially viable claim against the nondiverse defendant it seeks to join, the plaintiff's principal purpose is not deemed to defeat diversity jurisdiction. *See Andrews Restoration*, 2015 WL 4629681, at *2 (citations omitted). "On the other hand, if the claims against the nondiverse defendant are not viable, this factor clearly weighs in favor of denying joinder." *Id*. (citations omitted).

In the proposed First Amended Complaint, Shaw asserts a quiet title claim against ARNS. "A suit to quiet title is a request to invoke the court's powers of equity in removing a 'cloud' on the plaintiff's title to the property." *Smitherman v. Bayview Loan Servicing, L.L.C.*, 727 F. App'x 787, 790 (5th Cir. 2018) (citing *Ellis v. Waldrop*, 656 S.W.2d 902, 905 (Tex. 1983)).

> To quiet title in his favor, a plaintiff "must allege right, title, or ownership in himself ... with sufficient certainty to enable the court to see he ... has a right of ownership that will warrant judicial interference." *Turner v. AmericaHomeKey, Inc.*, 514 F. App'x 513, 516

> (5th Cir. 2013) (per curiam) (unpublished) (citing *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App. – Beaumont 2000, pet. denied)). Importantly, the plaintiff in a quiet title action must recover on the strength of his title, not on the alleged weakness of the defendant's title. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App. – Corpus Christi 2001, no pet.).

Id. at 790-91. "Under Texas law, to prevail in a suit to quiet title, the plaintiff must prove: (1) his right, title, or ownership in real property; (2) that the defendant has asserted a 'cloud' on his property, meaning an outstanding claim or encumbrance valid on its face that, if it were valid, would affect or impair the property owner's title; and (3) that the defendant's claim or encumbrance is invalid." *Warren v. Bank of Am., N.A.,* 566 F. App'x 379, 382 (5th Cir. 2014). In a suit to quiet title, a plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see [that] he or she has a right of ownership that will warrant judicial interference." *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App. – Beaumont 2000, pet. denied). To prevail, a plaintiff must "show a superior interest in the property." *Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015).

In his proposed First Amended Complaint, Shaw alleges that he sought a loan modification from Wells Fargo concerning property located at 2505 Willowgate Lane, Carrolton, Texas. *See* Dkt. No. 12 at 1, 2. Because of misrepresentations by Wells Fargo, Shaw's second payment under the trial loan modification was made one day late. *See id.* at 2-3. Wells Fargo refused to accept the payment and gave Shaw conflicting information as to whether the trial loan modification plan had been terminated. *See id.* at 3. Wells Fargo later told Shaw that he could re-enroll in the plan and that it's re-entry team would contact him, but it never did. *See id.* at 3-4.

In June 2019, Wells Fargo notified Shaw that a re-evaluation of the mortgaged property's value had been performed, and his home's value had been recalculated to be $311,921. *See id.* at 4. Wells Fargo then posted Shaw's home for foreclosure. *See id.*

When Shaw learned of the pending foreclosure, he contacted Wells Fargo and was told that the only way he could avoid foreclosure was by making a payment of the past due amount. *See id.* Wells Fargo would not accept payment until a formal quote letter was prepared showing the exact amount due, but because it would take 48 hours to prepare and send the letter, Wells Fargo told Shaw that the earliest he could expect it would be Friday afternoon, which would be too late for him to make payment of the amount past due. *See id* at 4-5.

Shaw received the letter earlier than expected on Friday and prior to Wells Fargo's stated close of business. *See id.* at 5. Wells Fargo refused to accept the tendered payment and told Shaw for the first time that the payment must be made by wire transfer. *See id.* Shaw told Wells Fargo that he had the funds on hand and would immediately transfer the money to his Wells Fargo account at his local branch and order the transfer. *See id.* Wells Fargo then told Shaw at 2:20 p.m. that it could not accept the payment because the cut-off time for same-day wire transfers was 2:00 p.m., even though Wells Fargo's wire transfer policies and procedures, which are published on its website, state that the deadline for same-day wire transfers is 4:30 p.m. *See id.* and n.1.

After Wells Fargo refused to accept payment for the amount past due, Shaw applied for a new loan modification. *See id.* at 6. After the deadline expired, Wells Fargo informed Shaw that it denied the application as incomplete because he failed to include the two back pages of two bank statement accounts. Those pages were "Intentionally Left Blank" and contained no information. *See id.* at 6-7.

The Property was posted for foreclosure sale on December 3, 2019. *See id.* at 7-8. Shaw's counsel contacted Albertelli Law on the morning December 3, 2019 and informed a paralegal in the foreclosure department that Counsel had e-filed a petition and an application for temporary restraining order earlier that morning. *See id.* at 7. Those documents are time-stamped as filed at 11:35 a.m. *See* Dkt. No. 1-4 at 1. Shaw's counsel was informed that, if he faxed a copy of the filed petition and application for temporary restraining order to Albertelli Law, the firm would immediately pull the foreclosure, which was slated to proceed later that day between 1:00 p.m. and 4:00 p.m. *See* Dkt. No. 12 at 7-8.

Based on those representations, Shaw's counsel diverted to his office to fax the documents, as requested, rather than proceed directly to the courthouse to obtain a hearing on Shaw's application for temporary restraining order. *See id.* at 8. Shaw's counsel completed the fax of the petition and application for temporary restraining order to Albertelli Law at 12:06 p.m. *See id.*

Immediately after receiving the transmittal confirmation, Shaw's counsel again called Albertelli Law and talked to a different paralegal who told him that the first paralegal had been wrong and that Albertelli Law required a copy of the signed

Temporary Restraining Order before it would cancel the foreclosure. *See id.* Shaw's counsel immediately drove to the Dallas County Courthouse to obtain an emergency hearing on Shaw's application. *See id.* A judge available to hear the application could not be located until 1:45 p.m. After a brief hearing, the judge signed the Temporary Restraining Order at 1:52 p.m. *See id.*; Dkt. No. 1-6 at 5.

Shaw's counsel then rushed the signed TRO to the courthouse steps where the foreclosures were being held but was informed that Shaw's home had sold for $199,300 only a few minutes before. *See* Dkt. No. 12 at 8. Shaw's counsel then attempted to speak with the Albertelli Law representative identified as Wells Fargo's Substitute Trustee for foreclosures that day, but the Trustee refused to provide Counsel with any information on the purchaser or confirm the $199,300 sales price – even after Shaw's counsel presented the signed TRO. *See id.* It was later discovered that the purported buyer of Shaw's home at the foreclosure sale was ARNS. *See id.*

Taking Shaw's allegations as true, as the Court must to determine whether Shaw has adequately plead a plausible claim against ARNS for purposes of the motion for leave to amend the complaint, the undersigned concludes that Shaw has stated a claim for quiet title against ARNS. Shaw alleges a superior right to ownership of the property and that the claim by ARNS, as the purchaser of the property at the foreclosure sale, although facially valid, creates a cloud on his Property and is invalid and enforceable.

    B. <u>Shaw was not dilatory in seeking to join ARNS as a party.</u>

The second *Hensgens* factor relates to the timing of the proposed joinder, and there is no set timetable for when a proposed amendment reflects dilatoriness. *See Andrews Restoration*, 2015 WL 4629681, at *6. Although courts generally find that a plaintiff "is not dilatory in seeking to amend 'when no trial or pre-trial dates were scheduled and no significant activity beyond the pleading stage has occurred,'" the analysis is different when the proposed amendment is to add nondiverse defendants shortly after removal based on federal diversity jurisdiction. *Shunatona*, 2016 WL 7665882, at *5 (quoting *Gallegos v. Safeco Ins. Co. of Ind.*, Civil Action No. H-09-2777, 2009 WL 4730570, at *4 (S.D. Tex. Dec. 7, 2009) (quoting *Smith v. Robin Am., Inc.*, Civil Action No. H-08-3565, 2009 WL 2485589, at *6 (S.D. Tex. Aug. 7, 2009)).

Shaw filed his original petition in state court on December 3, 2019 – the same day the Property was sold at the foreclosure sale. Wells Fargo removed the case to this Court on December 31, 2012. Shaw's claim against ARNS did not accrue until after he filed his original petition. Shaw filed his purported First Amended Complaint to add ARNS within the 21-day deadline to amend as a matter of right, demonstrating a desire to bring ARNS into the lawsuit soon after he learned that ARNS purchased the Property at the foreclosure sale.

Under these circumstances, Shaw was not dilatory in seeking to add ARNS as a party, and the second *Hensgens* factor weighs in favor of granting the motion.

C. <u>Shaw would be injured if ARNS is not joined as a party.</u>

In considering the third *Hensgens* factor – whether the plaintiff would be prejudiced by denying leave to amend – courts consider whether the already named

diverse defendant would be unable to satisfy a future judgment and to whether the plaintiff could recover against the proposed nondiverse defendant. Some courts analyze whether the possibility of a separate state court proceeding weighs against denying the proposed amendment because of the inefficiency of parallel proceedings, or because such proceedings would place a financial burden on the plaintiff. *See Shunatona*, 2016 WL 7665882, at *5.

Wells Fargo and Albertelli Law could not provide complete relief in the form of a clear title to the Property without ANRS. Shaw does not seek money damages from ARNS, and there is no evidence ARNS would be unable to comply with the declaratory relief sought.

The third *Hensgens* factor weighs in favor of granting the motion.

D. Equitable Factors

The final *Hensgens* factor requires this Court to analyze other equitable factors. Although equitable factors include whether granting leave to amend would deprive a defendants of a properly-invoked federal forum, *see, e.g., Smith*, 2009 WL 2485589, at *6, or whether denying leave to amend would result in parallel state court proceedings, *see Tomlinson*, 2006 WL 1331541 at *6 (quoting *Hensgens*, 833 F.2d at 1182), these factors are likely to present whenever a plaintiff in a removed case seeks to add a nondiverse defendant, *see Gallegos*, 2009 WL 4730570, at *5; *see also Shunatona*, 2016 WL 7665882, at *5. Because neither party points to additional equitable factors beyond these considerations, the fourth *Hensgens* factor is neutral.

E. Final Analysis

Considering the *Hensgens* factors, the undersigned concludes that the proposed amendment is not primarily for the purpose of defeating federal subject matter jurisdiction.

III. Wells Fargo's objections to the fraud and negligent misrepresentation claims against it are outside the scope of the permitted response.

The undersigned ordered Shaw to file a motion for leave to file the proposed First Amended Complaint to provide information regarding the parties' citizenship for purposes of diversity jurisdiction and, if that information, if credited, would lead to a conclusion that Shaw and ARNS are citizens of the same state, to address the relevant factors that courts consider in deciding whether to permit a non-diverse defendant's post-removal joinder that will defeat diversity jurisdiction and require remand. See Dkt. No. 14. The undersigned also allowed Defendants to file a response to the motion for leave. *See id.*

In his proposed First Amended Complaint, Shaw seeks to add claims against Wells Fargo for fraud, negligent misrepresentation, and quiet title. See Dkt. No. 12 at 9-11, 14-15. In its response, Wells Fargo objects to granting Shaw leave to add the fraud and negligent misrepresentation claims. Wells Fargo argues that the fraud claim fails as a matter of law, Shaw fails to state a claim for negligent misrepresentation, and the tort claims are barred by the economic loss doctrine. Those arguments are more akin to a motion to dismiss to which Shaw should have an opportunity to respond and are outside the scope of the limited jurisdictional issue that was ordered to be addressed in the motion for leave.

**Recommendation**

The Court should grant Plaintiff's Motion for Leave to Amend Complaint [Dkt. No. 27] and, because the addition of ARNS Investments LLC as a defendant destroys complete diversity, remand this case to the 162nd Judicial District Court of Dallas County, Texas, from which it was removed.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 1, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE